IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DEVIN G. NUNES              )
                                     )
       Plaintiff,            )
                                     )
v.                             )          Case No. 3:20-cv-146-REP
                                     )
                                   )
WP COMPANY, LLC      )
d/b/a The Washington Post  )
    et al                  )
                                   )
       Defendants.       )
                                    )

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, Devin G. Nunes ("Plaintiff"), by counsel, respectfully submits the following Memorandum in Opposition to the motion to dismiss [*ECF No. 8*] filed by defendant, WP Company, LLC d/b/a The Washington Post ("WaPo"):

### I.  INTRODUCTION

This case presents another example of the main stream media making up facts out of whole cloth and spreading the false statements indiscriminately to millions online and via social media. There is no justification for this behavior, especially from a "news" organization whose motto is "*Democracy Dies in Darkness*". WaPo is almost right: Democracy Dies in Defamation. The practice of defaming public figures is proliferating. It must be stopped. Freedom of speech is not absolute. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942) ("It is well understood that the right of free speech is not absolute at all times and under all circumstances."); *id. Ashcroft v. Free Speech Coal.*,

1

535 U.S. 234, 245-246 (2002) ("freedom of speech has its limits; it does not embrace certain categories of speech, including defamation").  False and defamatory statements, like those published by WaPo, are not entitled to __*any*__ constitutional protection. *See, e.g., Chaplinsky*, 315 U.S. at 572 ("There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem.  These included the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words-those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.  It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality."); *id. Herbert v. Lando*, 441 U.S. 153, 171 (1979) ("[s]preading false information in and of itself carries no First Amendment credentials."); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349-350 (1974) (there is "no constitutional value in false statements of fact."); *Chaves v. Johnson*, 230 Va. 112, 121-122, 335 S.E.2d 97 (1985) (the constitutional guarantees of free speech "have never been construed … to protect either criminal ... or tortious conduct.").

On March 2, 2020, Plaintiff filed a two-count complaint against WaPo and its "intelligence and national security" staff writer, Shane Harris, alleging claims of defamation and civil conspiracy.  Plaintiff's claims arises out of a hit piece published online and via social media on February 20, 2020 and in print on February 21, 2020. WaPo has responded to Plaintiff's complaint by filing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In its motion, WaPo argues that Plaintiff "failed to allege a false and defamatory statement or implication, and that he has

failed to plausibly allege that the Post acted with actual malice."  WaPo also urges the Court to apply a California procedural law in this diversity action, and to dismiss the case because Plaintiff "failed to seek an unequivocal demand for correction or retraction" of the defamatory publication as required by the California procedural law. [*ECF No. 9 ("WaPo Mot."), ¶ 1*].  WaPo claims that Plaintiff's conspiracy claim should be dismissed because Plaintiff's underlying defamation claim fails and because it is based on "conclusory allegations". [*Id., ¶ 2*].

The matter is before the Court on WaPo's motion to dismiss.[1]  For the following reasons, WaPo's motion should be denied.

## II.  BACKGROUND

This action follows publication of an article in Virginia by WaPo, which WaPo then republished to millions of its followers on Twitter and Facebook in Virginia, and then published in print to millions more.  Plaintiff is the Ranking Member of the House Permanent Select Committee on Intelligence (the "House Intelligence Committee").  The Committee oversees the United States national security apparatus, including the

---

[1]        Throughout its memorandum in support of motion [*ECF No. 9*], WaPo interjects irrelevant and impertinent commentary, such as "[t]his is one of a series of libel actions brought against the press by California Congressman Devin Nunes in the past year—the fifth in Virginia alone" and "the Complaint in this case may strike the Congressman's supporters as an effective political statement".  These matters have nothing to do with the issues before the Court.  Plaintiff brought this action because he was egregiously harmed – plain and simple – by false statements that were completely made up.  Plaintiff has every right to take legal action to protect his liberty interest in an unimpaired reputation. *See Hudnall v. Sellers*, 800 F.2d 377, 382 (4th Cir. 1986) (affirming jury verdict, where defendant knowingly concocted the accusations out of whole cloth).

intelligence-related activities of seventeen agencies, departments, and other elements of the United States Government, most of which are located in Virginia.[2]

On February 20, 2020, WaPo published an article online about Plaintiff written by Harris and others entitled, "**Senior intelligence official told lawmakers that Russia wants to see Trump reelected**" [https://www.washingtonpost.com/national-security/after-a-congressional-briefing-on-election-threats-trump-soured-on-acting-spy-chief/2020/02/20/1ed2b4ec-53f1-11ea-b119-4faabac6674f_story.html].    The online article intentionally falsified several facts:  First the article falsely stated that "Devin Nunes told President Trump that Shelby Pierson had given the assessment (that 'Russia wants to see President Trump reelected, viewing his administration as more favorable to the Kremlin's interests') exclusively to Rep. Adam B. Schiff (D-Calif.), the chairman of the House Intelligence Committee" and "the lead impeachment manager, or prosecutor, during Trump's Senate trial on charges of abuse of power and obstruction of Congress". Second, the article falsely states that "Trump's opinion [of acting Deputy of National Intelligence, Joseph Maguire] shifted last week when he heard from a Republican ally [Nunes] about the official's remarks". [*ECF No. 1 ("Complaint"), ¶¶ 3, 4*].  Plaintiff alleges that WaPo's false statements impute to him criminal conduct in violation of Title 18 U.S.C. § 1001(a), dishonesty, deceit, sharp and unethical practices, and independently actionable tortious acts, all of which severely impugns Plaintiff's integrity and prejudices him in the performance of his duties as a United States Congressman.  Read in context and in its entirety, Plaintiff contends that the defamatory gist of the WaPo hit piece is that Plaintiff lied to and deceived the President of the United States, which caused the

---

[2]    The focus of the WaPo article is on one of those agencies: the Office of the Director of National Intelligence ("ODNI").  ODNI is located in Virginia.

President to become "angry at his acting director of national intelligence, Joseph Maguire, in the Oval Office, seeing Maguire and his staff as disloyal for speaking to Congress about Russia's perceived preference", which "furious response" "ruined Maguire's chances of becoming the permanent intelligence chief". [*Complaint, ¶¶ 5, 6*].

Plaintiff alleges that WaPo knew the statements were false or, at the least, acted with reckless disregard for the truth. [*Complaint, ¶¶ 7, 21*].  Not content with its online publication, and as further evidence that WaPo was out to get Plaintiff, WaPo chose to republish the hit piece excessively on social media to its 14,900,000 followers on Twitter and to its 6,424,700 followers on Facebook.  Harris, for his part, republished the article to his 90,400 followers on Twitter.  The WaPo hit piece was also republished by a whole host of WaPo employees and agents acting to spread the harm. [*Id., ¶¶ 9, 14, 15*]. WaPo's defamatory statements were naturally and foreseeably repeated by CNN and its agents, by MSNBC and its agents, by Politico and its agents in Virginia, by political operatives in Richmond, Virginia, and by many others in Virginia. [*Id., ¶¶ 15, 19*].

Publication and republication of WaPo's defamatory statements occurred predominantly in Virginia, where Plaintiff suffered substantial injury to his reputation. [*Complaint, ¶¶ 3, 8, 12, 23*].

### III.  <u>STANDARD OF REVIEW UNDER FED. R. CIV. P. 12(b)(6)</u>

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F,2d 8943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and procedure* § 1356 (1990)).  Federal Rule of Civil Procedure 8(a)(2) "requires only a short

and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Goulmamine v. CVS Pharmacy, Inc.*, 138 F.Supp.2d 652, 658 (E.D. Va. 2015).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff, with all reasonable inferences being drawn in plaintiff's favor. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).  A 12(b)(6) motion should be granted only if, "after accepting all well-pleaded allegations ... as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (cited in *Goulmamine*, 138 F.Supp.2d at 658)).

## IV.  DISCUSSION

It is well-established that Federal courts sitting in diversity apply the forum state's choice of law rules. *See, e.g., Klaxon Co. v. Stentor Elec Mfg. Co.*, 313 U.S. 487, 496-497 (1941).  Under Virginia law, procedural matters are governed by the law of the forum state and substantive issues are governed by the law of the place of the wrong. *See, e.g., Jones v. R.S. Jones and Associates, Inc.*, 246 Va. 3, 431 S.E.2d 33 (1993) ("According to the settled rule, 'the *lex loci* will govern as to all matters going to the basis of the right of action itself, while the *lex fori* controls all that is connected merely with the remedy.'") (quotation omitted); *Hooper v. Mussolino*, 234 Va. 558, 566, 364 S.E.2d 207 (1988) ("Under settled choice-of-law principles, however, we will apply our own law in matters

that relate to procedure") (citations omitted); *see id. Keeton v. Hustler Magazine, Inc,*, 465 U.S. 770, 778 fn. 10 (1984) ("Under traditional choice of law principles, the law of the forum State governs on matters of procedure").

A.      ***WAPO'S MOTION BASED ON CALIFORNIA PROCEDURAL LAW***

In its motion to dismiss, WaPo argues that a California law – California Civil Code § 48a – applies in this action.  It does not.

1.      ***The California Law Does Not Apply On Its Face***

California Civil Code § 48a(a) provides that in an action for damages for the publication of a libel "in a daily or weekly news publication, or of a slander by radio broadcast," the plaintiff "shall only recover special damages unless a correction is demanded and is not published".

The WaPo hit piece and the tweets and posts on Twitter and Facebook at issue in this action are neither daily or weekly news publications nor radio broadcasts.  The California statute does not apply on its face.

2.      ***The California Law Does Not Apply to Claims Of Defamation Per Se***

At common law, defamatory words that are actionable *per se* include (1) statements that "impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished", (2) statements "which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment", and (3) statements which prejudice such person in his profession or trade. *See, e.g., Tronfeld v. Nationwide Mutual Insurance Company*, 272 Va. 709, 713,

636 S.E.2d 447 (2006); *id. Goulmamine*, 138 F.Supp.,2d at 659 (citing *Hatfill v. New York Times Co.*, 416 F.3d 320, 330 (4th Cir. 2005)).

In Count I of his complaint, Plaintiff states a claim of defamation ***per se***. [*Complaint, ¶ 6 ("The WaPo Hit Piece imputes to Plaintiff criminal conduct in violation of Title 18 U.S.C. § 1001(a), dishonesty, deceit, sharp and unethical practices, and independently actionable tortious acts, all of which severely impugns Plaintiff's integrity and prejudices him in the performance of his duties as a United States Congressman.")*; *¶ 18 ("WaPo and Harris' false statements constitute defamation per se. The statements accuse and impute to Plaintiff criminal misconduct, and an unfitness to perform the duties of an office or employment for profit, or the want of integrity in the discharge of the duties of such office or employment, including dishonesty, deceit, fraud, lack of ethics, lack of veracity, and independently tortious acts. WaPo and Harris' false statements also prejudice Plaintiff in his profession and employment as a United States Congressman.*].

**California Civil Code § 48a does not apply to claims of defamation *per se*, such as Plaintiff's claim in this case**. *See, e.g., Todd v. Lovecraft*, 2020 WL 60199, at * 20 (N.D. Cal. 2020) ("[i]n addition to the other elements of a defamation claim, a claim for defamation ***per quod*** requires a plaintiff to plead special damages") (emphasis added); *Clark v. Hidden Valley Lake Association*, 2018 WL 3069285, at * 6 (N.D. Cal. 2018) ("Defendant's argument is without merit in this case, where plaintiff prevailed on his defamation per se claims. Under California law, defamation per se does not require proof of actual damages but instead presumes that the plaintiff has suffered such damages. 'The tactical significance of [using a] libel per se theory is obvious: If [the plaintiff] can plead and prove libel per se it need not prove special damages: 'Damage to plaintiff's

reputation is conclusively presumed and he need not introduce any evidence of actual damages in order to obtain or sustain an award of damages'") (quotations and citations omitted).[3]

    **3.**    *__California Civil Code § 48a Is A Procedural Law__*

In Virginia, it is axiomatic and settled that the law of the forum – Virginia – governs matters of procedure.

California Civil Code § 48a is a matter of procedure.  Merriam-Webster defines "procedure" as "a particular way of accomplishing something or of acting." [https://www.merriam-webster.com/dictionary/procedure]; *see also American Heritage Dictionary* 1404 (5th ed. 2018) ("a manner of proceeding; a way of performing of affecting something"); *Black's Law Dictionary* 1398 (10th ed. 2014) ("a specific method or course of action"); *Random House Dictionary* 1542 (2nd ed. 1987) ("an act or a manner of proceeding in any action or process; conduct").

Because it is a matter of procedure, California Civil Code § 48a does not apply.

    **4.**    ***California Civil Code § 48a Violates Virginia Public Policy***

There is no requirement in Virginia that a victim of defamation demand a retraction or a correction prior to filing suit.

---

[3]    Virginia law is in accord.  Upon proof of defamation *per se*, "injury to plaintiff's personal and business reputation, humiliation, and embarrassment is presumed." *Virginia Model Jury Instruction No. 37.105 (citations omitted)*; *Askew v. Collins*, 283 Va. 482, 486, 722 S.E.2d 249 (2012) ("as a matter of law, the jury needed no proof of damages suffered by Collins on which to predicate its compensatory award based upon the per se defamation negligently published by Askew.  The reputational damage to Collins resulting from Askew's statement was properly presumed, and the jury's award of compensatory damages to Collins [$350,000.00] was appropriate under established common law principles for per se defamation.  Accordingly, the trial court did not err in refusing to set aside the verdict.").

Grafting California Civil Code § 48a onto a cause of action for defamation would be contrary to Virginia law. It would impose an added statutory requirement in defamation cases that has never been adopted by the Virginia General Assembly.

**5.** ***Virginia Law Applies – Not California***

In actions involving tortious publications, Virginia courts routinely define the place of the wrongful act as the state where the content at issue was published. *See, e.g., ABLV Bank v. Ctr. For Advanced Def. Studies, Inc*, 2015 WL 12517012, at * 1 (E.D. Va. 2015) ("[F]or libel claims, Virginia looks to where the statement was published.") (cited in *Cockrum v. Donald J. Trump for President, Inc.*, 365 F.Supp.3d 652, 669 (E.D. Va. 2019)); *PBM Products, LLC v. Mead Johnson Nutrition Co.*, 678 F.Supp.2d 390, 398 (E.D. Va. 2009) ("Because Mead Johnson alleges that the defamatory Press Release was issued in Virginia, Virginia law applies"); *id. Meadows v. Northrup Grumman Innovation Systems, Inc.*, 2020 WL 476671, at * 4 (W.D. Va. 2020) ("In defamation actions, the place of the harm has traditionally been considered to be the place where the defamatory statement was published, i.e., seen or heard by non-parties.") (quoting *Wells v. Liddy*, 186 F.3d 505, 521-522 (4th Cir. 1999)); *see also Edwards v. Schwartz*, 378 F.Supp.2d 468, 502 (W.D. Va. 2019) ("In defamation cases, Virginia courts apply the substantive law of the state where the defamatory statements were first published … When the alleged defamation is executed via email correspondence, the place of publication is dictated by the place where the email was opened and read."); *Scott v. Moon*, 2019 WL 332415, at * 3 fn. 5 (W.D. Va. 2019) ("Scott alleges that Moon published the statements at issue on a website that he controls from Florida. Accordingly, Florida law applies to Scott's claims against Moon"); *Scott v. Carlson*, 2018 WL 6537145, at * 2 fn. 3 (W.D. Va. 2018)

("Scott alleges that Carlson, a New York resident, published the statements at issue on a website that he created and on YouTube. Accordingly, New York law applies to Scott's claims against Carlson."). Publication occurs when the tortious content is "communicated to a third party" so as to be "heard and understood by such person." *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F.Supp.2d 909, 915 (E.D. Va. 2004) (citing *Thalhimer Bros. v. Shaw*, 159 S.E. 87 (1931)); *Depp v. Heard*, Case No. CL-2019-2911 (Fairfax Cir. 2019) (Letter Opinion, pp. 8) ("the place of the wrong in this case is the place where the act of publication of Ms. Heard's Op-Ed to the internet occurred … [T]he Op-Ed was then published on *The Washington Post's* website at Ms. Heard's instruction … *The Washington Post's* online edition is 'created on a digital platform in Virginia and routed through servers in Virginia … Using the servers located in Springfield, Virginia, *The Washington Post* posed it to the internet").[4]

Here, Plaintiff alleges that publication of the defamatory statements occurred in Virginia. [*Complaint, ¶ 3, 12, 15*]. WaPo's tortious content was uploaded to its digital network in Virginia and, by WaPo's own admission, published by a printing press in Springfield, Virginia. [*See Harris Declaration, ¶ 8 ("The print edition was printed at the Post's press in Springfield, VA")*]. Even if the Court accepts that Harris wrote the article in D.C., Plaintiff alleges that the brunt of the injury occurred in Virginia, where WaPo's falsehoods were circulated to, read by, and republished to millions, damaging Plaintiff's personal and professional reputation as Ranking Member of the House Intelligence Committee. *Compare Keeton*, 465 U.S. at 777 ("The tort of libel is generally held to occur wherever the offending material is circulated. Restatement (Second) of Torts §

---

[4]     A copy of the Court's unreported decision in *Depp v. Heard* is attached as *Exhibit "A"*.

577A, Comment a (1977).  The reputation of the libel victim may suffer harm even in a state in which he has hitherto been anonymous.  The communication of the libel may create a negative reputation among the residents of a jurisdiction where the plaintiff's previous reputation was, however small, at least unblemished.").  The locus of the injury in this case is clearly Virginia – not California.

At this stage of the proceeding, Plaintiff's allegations must be viewed in the light most favorable to him.  WaPo invites the Court to apply a "most significant relationship" test recently formulated by the Western District of Virginia, but never accepted by the Virginia Supreme Court, and to mechanically find that the state where "most" of the injury occurred is California, simply because this is Plaintiff's domicile.  The Virginia Supreme Court has consistently rejected the "most significant relationship" test.  In cases, such as this, where the injury is literally felt worldwide *because of the defendant's publications and republications via Twitter*, the traditional rule – the law of the place of publication – provides the most uniform and predictable result.  Even if the Court were to follow the rationale in *Gilmore v. Jones*, however, under the facts of this case, as alleged in the complaint, Plaintiff's injuries are, in fact, concentrated in Virginia.  There is no need for the Court to guess what the Virginia Supreme Court would do or not do.  Traditional choice of law rules, accepted and applied by this Court in *Cockrum* and many other cases cited above, demonstrate that California law does not and should not apply.

**B.**     ***PLAINTIFF HAS STATED A CLAIM OF DEFAMATION PER SE***

To be actionable, a statement must be "both false and defamatory." *Goulmamine*, 138 F.Supp.2d at 659 (quoting *Jordan v. Kollman*, 269 Va. 569, 575, 612 S.E.2d 203 (2005)).  At the 12(b)(6) stage in a defamation case, "a court must accept as false any

statements which the Complaint alleges to be false. *Goulmamine*, 138 F.Supp.2d at 659 (citing *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993)). "Because the Court presumes falsity at this stage, the key actionability question in deciding a motion to dismiss is whether the statements referenced in the Complaint are defamatory." *Id.*

Whether a statement is capable of having defamatory meaning is a question of law for the Court to decide.

> "In determining whether or not the language does impute a criminal offense, the words must be construed in the plain and popular sense"; an express allegation of criminal activity is not necessary.
> …
>
> With regard to impugning fitness for one's trade, an 'implication ... that the plaintiff is guilty of unethical and unprofessional conduct ... for which conduct the defendant suggests ... that the plaintiff could and should be subjected to disbarment proceedings' is defamatory *per se,* because it "impute[s] conduct tending to injure him in his profession.'"

*Goulmamine*, 138 F.Supp.2d at 659 (citing and quoting *Hatfill*, 416 F.3d at 331; *Carwile v. Richmond Newspapers*, 196 Va. 1, 8, 82 S.E.2d 588 (1954)). Significantly, statements falsely attributed to a plaintiff – such as the statements in this case – are actionable as defamation regardless of the truth or falsity of the substance of the quotation when it injures the plaintiff's reputation. *See, e.g., Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 511-512 (1991); (cited in *Chapman v. Journal Concepts, Inc.*, 2008 WL 5381353 (D. Haw. 2008)); *Levesque v. Doocy*, 560 F.3d 82 (1st Cir. 2009) (false attribution of comments to plaintiff encouraged listeners to form negative conclusions about plaintiff tending to harm his reputation); *Kerby v. Hal Roach Studios, Inc.*, 53 Cal.App.2d 207, 127 P.2d 577 (1942) (defamation may be accomplished by falsely putting words into the mouth of the person defamed and imputing to such person a willingness to use them 'where the mere fact of having uttered or used the words' would

produce harm to plaintiff's reputation); *see id. Schmalenberg v. Tacoma News, Inc.*, 87 Wash.App. 579, 943 P.2d 350 (1997) (a statement may be provably false because it is falsely attributed to a person who did not make it even if the matter asserted in the statement is true) (cited and quoted in *Tharpe v. Saunders*, 285 Va. 476, 737 S.E.2d 890 (2013)).

## 1.  *WaPo's Statements Are Capable Of a Defamatory Meaning*

WaPo's statements are pernicious and actionable.  WaPo falsely attributed statements to Plaintiff.  WaPo falsely accused Plaintiff of telling the President that Pierson gave an "exclusive" briefing to Adam Schiff, "the lead impeachment manager, or prosecutor, during Trump's Senate trial on charges of abuse of power and obstruction of Congress",[5] which "ruined" acting Director of National Intelligence, Joseph Maguire's, chances of "becoming the permanent intelligence chief". [*Complaint, ¶¶ 4, 5*].  Making false statements to the President is a federal crime.  At the very least, it is tortious conduct which imputes to Plaintiff, a United States Congressman, dishonesty and unethical practices that violate the House Ethics Rules and that could subject Plaintiff to significant disciplinary proceedings.  Lying to the President is also something that would clearly prejudice Plaintiff in his profession.  The tweet by WaPo White House reporter, Josh Dawsey ("Dawsey"), [https://twitter.com/jdawsey1/status/1230588169877323782] – cited in paragraph 15 of the complaint – is a perfect example of the impact of the WaPo hit piece on readers.  Dawsey plainly understood that "POTUS" <u>believed</u> the statement falsely attributed to Plaintiff by WaPo and Harris.

---

[5]    One might expect that Plaintiff's statement to the President – if Plaintiff had actually made the statement – would have been caused the "furious response", especially given that Schiff was leading the efforts to impeach the President.

Plaintiff has thus pled statements that are defamatory *per se,* and that he claims are untrue.  WaPo makes no claim that the statements are privileged.  Therefore, drawing the proper inferences in favor of the Plaintiff, he has alleged actionable statements sufficient to state a claim for relief, and thus to move past the 12(b)(6) stage.

2.   ***Plaintiff Has Plausibly Alleged Actual Malice***

In paragraphs 7 and 21 of his complaint, Plaintiff states multiple inter-related reasons why WaPo's statements were published online and then repeated via social media with "actual malice".  Actual malice is a ordinarily a question of fact for the Jury. *Federal Land Bank v. Birchfield*, 173 Va. 200, 222-223, 3 S.E.2d 405 (1939) ("Generally ... malice is a question of fact to be submitted to a jury").  It is a fact-intensive inquiry that can rarely be resolved on a motion to dismiss under Rule 12(b)(6).  Significantly, the issue cannot be resolved by looking at any one factor alone.  In *Harte-Hanks Communications, Inc. v. Connaughton*, for example, the United States Supreme Court held that the "failure to investigate will not **alone** support a finding of actual malice." 491 U.S. 657, 692 (1989) (emphasis added); *see Eramo v. Rolling Stone, LLC*, 2016 WL 5234688, at * 5 (W.D. Va. 2016) ("Although failure to adequately investigate, a departure from journalistic standards, or ill will or intent to injure will not singularly provide evidence of actual malice, the court believes that proof of all three is sufficient to create a genuine issue of material fact.  Plaintiff, however, goes further.  Pointing to Erdely's own reporting notes [obtained in discovery], plaintiff also forecasts evidence that could lead a reasonable jury to find that Erdely had 'obvious reasons to doubt [Jackie's] veracity' or 'entertained serious doubts as to the truth of [her] publication.'").

Under familiar principles, the following factual allegations in Plaintiff's complaint must be accepted as true:

1.      WaPo fabricated its anonymous sources.  In truth, WaPo and Harris knew that the only source of the false statements attributed to Plaintiff were House Democrats. [*Complaint, ¶ 7 ("Acting in concert with House Democrats, WaPo and Harris republished false statements in order to impugn Plaintiff's reputation and undermine his relationship with the President.")*]; *see Poulston v Rock*, 251 Va. 254, 263, 476 S.E.2d 479 (1996) ("It is uncontroverted that Rock was out to 'get' Poulston and sought to accomplish this end by interfering with Poulston's employment and reputation.").

2.      "WaPo and Harris manufactured the statements [falsely attributed to Plaintiff] out of whole cloth.  The events never happened." [*Complaint, ¶ 21(a)*]; *see Goodman v. Performance Contractors, Inc.*, 363 F.Supp.3d 946, 970-971 (N.D. Iowa) ("summary judgment is not appropriate on the basis of qualified privilege if there is a question of fact as to whether the speaker manufactured grounds for discharging the plaintiff"); *see also St. Anant v. Thompson*, 390 U.S. 727 (1968) ("Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call.  Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation").

3.      "WaPo and Harris conceived the story line in advance of any investigation and then consciously set out to publish statements that fit the preconceived story." [*Complaint, ¶ 21(b)*]; *see, e.g., Eramo*, 2016 WL 5234688, at * 5 (W.D. Va. 2016)

("evidence that a defendant conceived a story line in advance of an investigation and then consciously set out to make the evidence conform to the preconceived story is evidence of actual malice, and may often prove to be quite powerful evidence.") (quoting *Harris v. City of Seattle*, 152 Fed.Appx. 565, 568 (9th Cir. 2005)).

4. "WaPo and Harris knew their anonymous sources had supplied false information. For instance, prior to publication Harris represented that "We know from the WH that Nunes and the president met at the WH on Thursday [February 13, 2020]". WaPo and Harris knew this statement was false. They did not include it in the WaPo Hit Piece. In spite of their knowledge of falsity and/or serious doubts as to the veracity of their sources, WaPo and Harris published the scandalous statements about Plaintiff." [*Complaint, ¶ 21(c)*].

5. "WaPo, Harris and their editors and publishers abandoned all journalistic standards and integrity, including WaPo's own code of ethics, in writing, editing, and publishing the WaPo Hit Piece. WaPo and Harris did not seek the truth or report it. WaPo and Harris betrayed the truth for the sake of their institutional bias against Plaintiff and President Trump. The WaPo Hit Piece is another example of opposition research published by WaPo and Harris acting as alter egos for others, including Schiff. Rather than minimize harm, WaPo and Harris set out to inflict maximum pain and suffering on Plaintiff in order to harm Plaintiff's reputation and undermine the President. WaPo never once considered the long-term implications of the extended reach and permanence of its various publications. WaPo and Harris refuse to be accountable; refuse to acknowledge their mistakes; refuse to retract; refuse to correct; and, of course, refuse to apologize. [https://members.newsleaders.org/resources-ethics-wapo;

https://www.spj.org/ethicscode.asp].” [*Complaint, ¶ 21(d)*]; *see Gilmore v. Jones*, 37 F.Supp.3d 630, 671 (W.D. Va. 2019) (a defendant's failure to observe journalistic standards, although not determinative, is relevant to the actual malice inquiry).

6.      “WaPo and Harris published the statements about Plaintiff in the face of unambiguous evidence of falsity, including the fact that Plaintiff was in Tulsa on February 14, 2020 – the day WaPo reports that the President learned of the “classified briefing” – and out of a desire to get Plaintiff, destroy his reputation and impair his ability to serve the United States and the President.” [*Complaint, ¶ 21(e)*].

7.      “The words chosen by WaPo and Harris, and their accusation that Plaintiff intended to harm Maguire, which is categorically false, evince their ill-will, spite and actual malice.” [*Id., ¶ 21(f)*]; *Kroger Grocery and Baking Co. v. Rosenbaum*, 171 Va. 158, 161-163, 198 S.E. 461 (1938) (“the question whether there was actual malice is for the jury to determine either from direct proof or as an inference from other proof or from the libel itself”).

8.      “WaPo and Harris harbor an institutional hostility, hatred, extreme bias, spite and ill-will towards Plaintiff, the GOP and President Trump, going back many years.  WaPo and Harris' enmity towards Plaintiff is evidenced, *inter alia*, by the many leaks of information by Harris to undermine Plaintiff in his role as Chairman of the House Intelligence Committee. [*See, e.g.*, https://www.washingtonpost.com/politics/risk-to-intelligence-source-who-aided-russia-investigation-at-center-of-latest-showdown-between-nunes-and-justice-dept/2018/05/08/d6fb66f8-5223-11e8-abd8-265bd07a9859_story.html (leaking FBI and “national intelligence officials'” alleged concern that information being sought by Plaintiff “could endanger a top-secret

intelligence source"); https://www.washingtonpost.com/politics/the-enigma-of-the-entire-mueller-probe-focus-on-origins-of-russian-investigation-puts-spotlight-on-maltese-professor/2019/06/30/b374fe8c-8185-11e9-bce7-40b4105f7ca0_story.html    (promoting the fake story that Joseph Mifsud was a "Russian" agent, and attacking as a "fringe idea" Plaintiff's position that Mifsud's connections with Western intelligence agencies make it unlikely he was a Russian agent)].  WaPo and Harris' bias and prejudice motivated WaPo and Harris to publish intentionally false statements about Plaintiff." [*Complaint, ¶ 21(g)*]; *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 315 fn 19 (5th Cir. 1995) ("[E]vidence of ill will can often bolster an inference of actual malice."); *id. AdvanFort Co. v. Maritime Executive, LLC*, 2015 WL 4603090, at * 8 (E.D. Va. 2015) ("If, in fact, TME knew of the bad blood between Plaintiffs and Defendant Cartner, it would have indeed had obvious reason to doubt Cartner's veracity and the accuracy of his statements given the blatantly hostile and sarcastic tone of the Article.").

9.     "WaPo, Harris and WaPo's many employees and agents reiterated, repeated and excessively published and republished the false defamatory statements about Plaintiff out of a desire to hurt Plaintiff and to permanently stigmatize him." [*Complaint, ¶ 21(h)*]; *Snyder v. Fatherly*, 158 Va. 335, 354, 163 S.E. 358 (1932) ("'it is considered competent for the plaintiff to show, as evidence of malice, that since the speaking or publication of the slander or libel … the defendant has repeated or republished the same, even though such repetition or republication has taken place since the commencement of the action'"); *Eramo*, 2016 WL 5234688, at * 5 ("Repetition of another's words does not release one of responsibility if the repeater knows that the words are false or inherently improbable, or there are obvious reasons to doubt the

veracity of the person quoted.")[6] (quoting *Goldwater v. Ginzburg*, 414 F.2d 324, 337 (2nd Cir. 1969), *cert. denied*, 396 U.S. 1049 (1970) (stating that repetition is one factor that may be probative of actual malice)); *see also Jones v. University of Iowa*, 836 N.W.2d 127, 149 (Iowa 2013) (actual malice may be shown by "excessive publication").

10.     "WaPo and Harris published the WaPo Hit Piece out of reprisal for the findings in the December 11, 2019 Inspector General (IG) Report.  The IG Report vindicated Plaintiff's position concerning the role of the Steele dossier in procuring FISA warrants against Carter Page, and exposed Harris and WaPo as liars.  WaPo and Harris were exposed on national television. [*See, e.g.*, https://www.foxnews.com/transcript/ig-report-confirms-steele-dossier-used-to-justify-spying-on-carter-page ("The [IG] report was a disaster for the credibility of our bureaucratic class in Washington.  But it's also a big, big problem for the American news media.  They were exposed as liars and know-nothings, as well.  We could [cite] you a million examples of this, but we're going to give you just a few because they paint the picture.  Here's one.  In early 2018, Washington Post intelligence and national security correspondent, Shane Harris, lectured Kim Strassel of The Wall Street Journal – someone who's frequently on this show – about how little she knew about the story.  'Yes,' he wrote condescendingly, 'I am telling you the dossier was not used as the basis for a FISA warrant on Carter Page,' – end quote.  Now, you may wonder how he could have known that since the FISA warrant was classified.  He's never explained.  But it doesn't matter.  It was false.  And now we know it's false.  But here's the key:  Harris has not apologized or even acknowledged his role in repeating falsehoods.  'Democracy dies in darkness,' right?  No.  His motives remain shrouded in

---

[6]     WaPo had every good reason to distrust the House Democrats, and especially Adam Schiff, who were/are sworn enemies of Plaintiff and the President.

darkness.")].  The WaPo Hit Piece was a malicious act of revenge by WaPo and Harris against Plaintiff." [*Complaint, ¶ 21(i)*].

11.    "WaPo and Harris disregarded Plaintiff's communications regarding the WaPo Hit Piece, and continue to stand by this fake news." *Daniczek v. Spencer*, 2016 WL 153086, at * 12 (E.D. Va. 2016) ("Spencer neglects that malice may be inferred under aggravating circumstances, including disregard for communications by others and the appearance of reprisal.").[7]

In sum, at this stage of the proceeding, when the Plaintiff's complaint is viewed in the light most favorable to him and when all reasonable inferences are drawn in his favor, as they are required to be, there is no question that Plaintiff has alleged actual malice.

**C.**    *PLAINTIFF ALLEGES A CLAIM OF COMMON LAW CONSPIRACY*

The elements of a claim of common law conspiracy are 1) an agreement between two or more persons; 2) to participate in an unlawful act; 3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; and 4) that the overt act was done pursuant to and in furtherance of the common scheme. *Harrell v. Colonial Holdings, Inc.*, 2013 WL 550424, at * 7 (E.D. Va. 2013) ("The 'unlawful act' element requires that at least one member of the conspiracy commit an 'underlying tort.' … This can include the inducement of a breach of contract or defamation, as alleged in this case.") (citations omitted).

_____

[7]    Plaintiff gave WaPO every opportunity to retract or correct the hit piece. On February 21, 2020, for instance, Plaintiff went on Fox News and declared that WaPo's statements were demonstrably false and that WaPo was forcing Plaintiff to sue it. [https://www.foxnews.com/media/devin-nunes-washington-post-trump-joseph-maguire]. WaPo did nothing to retract, correct, or apologize.

Plaintiff's complaint clearly and unmistakably alleges that WaPo and Harris conspired with House Democrats to publish false and defamatory statements about Plaintiff.  The complaint identifies (a) the purpose of the conspiracy, (b) when it was hatched, (c) who participated in the overt acts, (d) the acts of defamation published in furtherance of the joint plan, (e) the coordinated nature of the attacks, including the common theme and timing of the WaPo hit piece, and (f) the role of each participant in accomplishing the common goal of the defamation campaign. [*Complaint, ¶¶ 7, 25, 26*]; *compare Steele v. Goodman*, 382 F.Supp.3d 403, 424 (E.D. Va. 2019) ("Plaintiffs adequately plead (1) the existence of an agreement between Negron and Goodman (2) to defame Plaintiffs, resulting in the production and publication of allegedly defamatory videos that (3) caused Plaintiffs damages.  Negron's participation in the production and publication of the videos constitutes an overt act to satisfy the fourth and final prong of the common law conspiracy claim"); *Ransome v. O'Bier*, 2017 WL 1437100, at * 4 (E.D. Va. 2017) ("In addition to alleging facts supporting a claim for defamation, Ransome also alleges that O'Bier, Sterrett, and Berman conspired to defame him, and that they used personal email accounts to coordinate and communicate their defamatory publications. The Court therefore denies the motion to dismiss Ransome's Count II common-law conspiracy claim as it relates to defamation."); *Massey Energy Co. v. United Mine Workers*, 2005 WL 3476771, at * 1 (Fairfax Cir. 2005) ("Plaintiffs allege that Defendants conspired to defame and defamed Plaintiffs with the purpose of injuring them in their trade, business, and profession.  Plaintiffs allege that this was done via a defamatory television advertisement broadcast into West Virginia and Virginia, a defamatory press release, and subsequently published articles containing that press release.").

## **CONCLUSION**

For the reasons stated above, the Court should deny WaPo's motion to dismiss, and set this matter for trial.


DATED:        April 23, 2020



DEVIN G. NUNES



By:    */s/ Steven S. Biss*
        Steven S. Biss (VSB # 32972)
        300 West Main Street, Suite 102
        Charlottesville, Virginia 22903
        Telephone:     (804) 501-8272
        Facsimile:     (202) 318-4098
        Email:         **stevenbiss@earthlink.net**

        *Counsel for the Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 23, 2020 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendants and all interested parties receiving notices via CM/ECF.

By: <u>    */s/ Steven S. Biss*                                        </u>
Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone:      (804) 501-8272
Facsimile:      (202) 318-4098
Email:          **stevenbiss@earthlink.net**

*Counsel for the Plaintiff*