UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

DEVIN G. NUNES,

        Plaintiff,

v.

                                              Case No. 3:20-cv-146

WP COMPANY LLC,
D/B/A THE WASHINGTON POST,
AND SHANE HARRIS,

        Defendants.

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## THE WASHINGTON POST'S MOTION TO DISMISS

WILLIAMS & CONNOLLY LLP

Kevin T. Baine (*pro hac vice*)
Thomas G. Hentoff (*pro hac vice*)
Nicholas G. Gamse (*pro hac vice*)
Emily A. Rose (VSB No. 89529)

725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
erose@wc.com

*Counsel for WP Company LLC*

# TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................1

ARGUMENT ....................................................................................................................2

I.      THE COMPLAINT FAILS TO STATE A DEFAMATION CLAIM. ..............................2

      A.      Plaintiff Has Not Alleged a False and Defamatory Statement or
             Implication. .......................................................................................2

      B.      Plaintiff Has Not Plausibly Alleged Actual Malice. ................................................3

      C.      Plaintiff Failed To Comply with the California Retraction Statute. ........................7

            1.      The Retraction Statute Applies to the Article at Issue. ...............................7

            2.      There Is No Exception to the Retraction Statute for Defamation
                    *Per Se*. ........................................................................................8

            3.      The Retraction Statute Is Not "Procedural." .................................................9

            4.      The Retraction Statute Does Not Violate Virginia "Public Policy." ...........9

            5.      California Law Applies to this Case. .........................................................10

            6.      There Is No Allegation of Special Damages...............................................14

II.     THE COMPLAINT FAILS TO STATE A CONSPIRACY CLAIM FOR
      ADDITIONAL REASONS. .........................................................................................14

CONCLUSION...................................................................................................................15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ABLV Bank v. Ctr. for Advanced Def. Studies Inc.*, 2015 WL 12517012 (E.D. Va.
   Apr. 21, 2015) ..................................................................................................................12

*AdvanFort Co. v. Maritime Executive, LLC*, 2015 WL 4603090 (E.D. Va. July 28,
   2015) ..............................................................................................................................5

*Adventure Outdoors, Inc. v. Bloomberg*, 2007 WL 9735875 (N.D. Ga. Dec. 18,
   2007) ..............................................................................................................................11

*Ascend Health Corp. v. Wells*, 2013 WL 1010589 (E.D.N.C. Mar. 14, 2013) .............................11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................1, 5, 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................................................15

*Besen v. Parents & Friends of Ex-Gays, Inc.*, 2012 WL 1440183 (E.D. Va. Apr.
   25, 2012) ..........................................................................................................................4

*Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993) .................................................1, 2, 3

*Chapman v. Journal Concepts, Inc.*, 2008 WL 5381353 (D. Haw. Dec. 24, 2008) ........................3

*Chesapeake Supply & Equip. Co. v. J.I. Case Co.*, 700 F. Supp. 1415 (E.D. Va.
   1988) ..............................................................................................................................10

*Cockrum v. Donald J. Trump for President, Inc.*, 365 F. Supp. 3d 652 (E.D. Va.
   2019) ..............................................................................................................................13

*Cox v. MAG Mut. Ins.*, 2015 WL 1640513 (E.D. Va. Apr. 9, 2015) ............................................15

*Cunningham Energy, LLC v. Outman*, 2013 WL 5274361 (S.D. W. Va. Sept. 18,
   2013) ..............................................................................................................................2, 3

*Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087 (N.D. Ill. 2016) .........................................7

*Edwards v. Schwartz*, 378 F. Supp. 3d 468 (W.D. Va. 2019) ......................................................12

*Gilmore v. Jones*, 370 F. Supp. 3d 630 (W.D. Va. 2019) ..................................................... *passim*

*Griffin v. Red Run Lodge, Inc.*, 610 F.2d 1198 (4th Cir. 1979) ....................................................9

*Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657 (1989) .......................................1, 5

*Hatfill v. Foster*, 415 F. Supp. 2d 353 (S.D.N.Y. 2006) ....................................................11, 13, 14

*Horace Mann Ins. v. Gen. Star Nat'l Ins.*, 514 F.3d 327 (4th Cir. 2008) ......................................13

*Hudson Assocs. Consulting, Inc. v. Weidner*, 2010 WL 1980291 (D. Kan. May 18, 2010) ..................................................................................................................................11

*Jenkins v. Snyder*, 2001 WL 755818 (E.D. Va. Feb. 6, 2001) ..........................................................3

*Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909 (E.D. Va. 2004) .......................11

*King v. ABC, Inc.*, 1998 WL 665141 (S.D.N.Y. Sept. 28, 1998) ...............................................9, 14

*Levesque v. Doocy*, 560 F.3d 82 (1st Cir. 2009) ................................................................................3

*Lokhova v. Halper*, 2020 WL 963032 (E.D. Va. Feb. 27, 2020) ......................................................7

*Mayfield v. NASCAR*, 674 F.3d 369 (4th Cir. 2012) .....................................................................4, 5

*McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501 (D.C. Cir. 1996) ..................................6

*Meadows v. Northrup Grumman Innovation Sys., Inc.*, 2020 WL 476671 (W.D. Va. 2020) .....................................................................................................................................11

*Michel v. NYP Holdings, Inc.*, 816 F.3d 686 (11th Cir. 2016) .........................................................4

*Parsi v. Daioleslam*, 890 F. Supp. 2d 77 (D.D.C. 2012) ..................................................................5

*Price v. Stossel*, 2008 WL 2434137 (S.D.N.Y. June 4, 2008) ..........................................................9

*Rybolt v. Jarrett*, 112 F.2d 642 (4th Cir. 1940) ...............................................................................9

*Spring v. United States*, 833 F. Supp. 575 (E.D. Va. 1993) .............................................................9

*Wells v. Liddy*, 186 F.3d 505 (4th Cir. 1999) .................................................................................11

*White v. Manchester Enter., Inc.*, 871 F. Supp. 934 (E.D. Ky. 1994) .............................................8

## STATE CASES

*Anschutz Entm't Grp., Inc. v. Snepp*, 90 Cal. Rptr. 3d 133 (Ct. App. 2009) ..................................8

*Depp v. Heard*, Case No. CL-2019-2911 (Fairfax Cir. 2019) .......................................................13

*Dreher v. Budget Rent-A-Car Sys., Inc.*, 634 S.E.2d 324 (Va. 2006) ...........................................10

*Harris v. Curtis Publ'g Co.*, 121 P.2d 761 (Cal. Dist. Ct. App. 1942) ...........................................8

*Kalpoe v. Superior Court*, 166 Cal. Rptr. 3d 80 (Ct. App. 2013) ...................................................8

*Kroger Grocery & Baking Co. v. Rosenbaum*, 198 S.E. 461 (Va. 1938) ........................................4

*McMillan v. McMillan*, 253 S.E.2d 662 (Va. 1979) ......................................................................14

*Tate v. Hain*, 25 S.E.2d 321 (Va. 1943)....................................................................................10

**OTHER AUTHORITY**

Cal. Civ. Code § 48a ........................................................................................................7, 8, 14

Fed. R. Civ. P. 12(b)(6)...................................................................................................4, 14, 15

## INTRODUCTION

Rep. Nunes's opposition to the Post's motion to dismiss only confirms the legal deficiencies in his Complaint.  It ignores the settled law on what must be shown to establish a claim of libel by implication.  It relies on conclusory allegations of actual malice that are clearly insufficient under Fourth Circuit precedent.  And it fails altogether to address the authority holding that under Virginia choice-of-law principles, multi-state defamation cases are governed by the law of the state of the plaintiff's injury—in this case, California (and its retraction statute).  As a result, the Complaint should be dismissed for any one of several reasons:

First, there is no "affirmative" evidence on the face of the publication that the Post "intend[ed] or endorse[d]" the allegedly defamatory inference that Rep. Nunes deceived President Trump.  *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093 (4th Cir. 1993).  The opposition completely disregards this requirement for defamation by implication cases, and does not even attempt to identify any such affirmative evidence.  There is none, and that alone is dispositive.  *Id.*

Second, plaintiff has the burden of alleging *facts* that could support a finding of actual malice, and that burden is not satisfied by his conclusory allegations that the Post knew its report was false, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), or by allegations that the Post acted with ill will or departed from journalistic standards, *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 665 (1989).

Third, Rep. Nunes does not argue that he complied with his state's retraction statute, and his attempts to escape its reach ignore the plain language of the retraction statute and the extensive authorities cited in the Post's opening brief.

It is readily apparent that this lawsuit was intended to serve two objectives unrelated to the proper purpose of seeking compensation for alleged reputational harm: to discourage and punish critical press coverage, and to advance Rep. Nunes's political fortunes.  Indeed, Rep. Nunes has

embarked on a campaign to use his lawsuits against the mainstream press as a device to raise money for his reelection.[1]  This case is meritless, and the mischief it seeks to cause can only be prevented if it is dismissed, as the law requires.

## ARGUMENT

## I.    THE COMPLAINT FAILS TO STATE A DEFAMATION CLAIM.

### A.    Plaintiff Has Not Alleged a False and Defamatory Statement or Implication.

Rep. Nunes has failed to make the "especially rigorous" showing required to establish defamation by implication.  *Chapin*, 993 F.2d at 1093.  The Fourth Circuit has long held that a plaintiff proceeding on a defamation by implication theory must show *both* that the alleged implication can be "reasonably" inferred from the challenged publication, and also that the publication on its face "affirmatively suggest[s] that the author intend[ed] or endors[ed] the inference."  *Id.*; *see also, e.g.*, *Cunningham Energy, LLC v. Outman*, 2013 WL 5274361, at *3 (S.D. W. Va. Sept. 18, 2013) ("Thus, language that is literally true is defamatory only if it satisfies *both prongs* of the *Chapin* test." (emphasis added));  Post Mem. 9-12.  The opposition fails even to acknowledge this holding in *Chapin,* much less show how it can be satisfied in this case.

Plaintiff argues simply that it is defamatory to accuse him of lying to the President.  *See, e.g.*, Opp. 14 ("Lying to the President is also something that would clearly prejudice Plaintiff in his profession.").  But he does not suggest that Post ever literally accused him of deceiving President Trump.  Nor could he.  The Post made no such statement; the Article did not say how President Trump arrived at his mistaken belief.  Post Mem. 10.

---

[1] *See* Jake Bernstein, *The Fundraising Pulpit*, N.Y. Review of Books (Apr. 23, 2020) (describing Rep. Nunes's Facebook ad campaign in which he invites readers to contribute and "Stand with Devin against the fake news media"), https://www.nybooks.com/articles/2020/04/23/republican-fundraising-pulpit/.

Nor does Plaintiff make a case that the Post *implied* that he lied to the President.  He does not show how the Post's Article can *reasonably* be construed to mean that he lied to the President, much less point to anything to suggest that the Post "intended" or "endorsed" that implication. Even where there is a reasonable defamatory implication present, the "especially rigorous" standard applied to such actions requires more—"affirmative" evidence, or a "clear signal that the [defendant] endorsed the inference." *Jenkins v. Snyder*, 2001 WL 755818, at \*5 (E.D. Va. Feb. 6, 2001); *accord Chapin*, 993 F.2d at 1093; *Cunningham Energy*, 2013 WL 5274361, at \*3.[2]  Rep. Nunes does not even attempt to identify any "affirmative" evidence on the face of the Article that could suggest that the Post intended the implication that he lied to the President.  If anything, for the reasons articulated in the Post's opening memorandum, the language of the Article establishes that the Post did not intend to convey that charge.  *See* Post Mem. 8-12.

Because the Article does not "affirmatively suggest that the [Post] intend[ed] or endors[ed] the inference" that Rep. Nunes lied to the President, his Complaint should be dismissed.  *Chapin*, 993 F.2d at 1093; *Jenkins*, 2001 WL 755818, at \*5.

### B.    Plaintiff Has Not Plausibly Alleged Actual Malice.

Rep. Nunes does not dispute that he is a public figure, so there can be no question that to survive a motion to dismiss he must plead facts sufficient to make a plausible case of actual malice. *See* Post Mem. 13 n.10.

---

[2] Rep. Nunes does not cite any authority proposing a different rule or explaining why he would not have to satisfy this test.  Indeed, he cites no legal authority at all in this section of his opposition. *See* Opp. 14-15.  Elsewhere his opposition cites cases for the unremarkable proposition that false attribution can be defamatory.  Opp. 13.  But those cases concern *express* statements of false attribution, as opposed to *implied* statements, and therefore are inapposite.  *See, e.g.*, *Levesque v. Doocy*, 560 F.3d 82, 89-90 (1st Cir. 2009) (publication expressly attributed allegedly defamatory quotations to plaintiff); *Chapman v. Journal Concepts, Inc.*, 2008 WL 5381353, at \*15 (D. Haw. Dec. 24, 2008) (same).  The Article here *did not* state that Rep. Nunes deceived President Trump; it reported only that "Trump *erroneously believed* that Pierson had given the assessment exclusively to Rep. Adam B. Schiff."  *See* Post Mem. 10 (emphasis added).

3

Rep. Nunes argues erroneously that actual malice "can rarely be resolved on a motion to dismiss under Rule 12(b)(6)." Opp. 15. To the contrary, because actual malice must be pleaded with plausibility in order to survive dismissal, courts routinely dismiss cases that fail to satisfy that requirement. *E.g.*, *Mayfield v. NASCAR*, 674 F.3d 369, 378-79 (4th Cir. 2012); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016); *Besen v. Parents & Friends of Ex-Gays, Inc.*, 2012 WL 1440183, at *3 (E.D. Va. Apr. 25, 2012); Fed. R. Civ. P. 12(b)(6). Rep. Nunes ignores this and other authority cited in the Post's brief, and cites no cases to support his unfounded position. *See* Post Mem. 13.[3]

At the same time, he fails to engage with the Post's argument that the Complaint fails plausibly to plead actual malice. *See* Post Mem. 12-17. Instead, he merely repeats various allegations from his Complaint, without analysis or reference to pleading requirements; he asserts that if these allegations are "accepted as true," then he has satisfied his burden of pleading actual malice. Opp. 12-16. But as a matter of law none of his allegations, alone or together, can establish actual malice.

First, Rep. Nunes points to several conclusory allegations boiling down to the idea that the Article was "manufactured . . . out of whole cloth." *See, e.g.*, Opp. 16 (citing Compl. ¶¶ 7, 21(a), 21(b), 21(f)). He ignores that "[t]his kind of conclusory allegation—a mere recitation of the legal

---

[3] Elsewhere Rep. Nunes' opposition cites an old state case for the proposition that "the question whether there was actual malice is for the jury to determine either from direct proof or as an inference from other proof or from the libel itself." *Kroger Grocery & Baking Co. v. Rosenbaum*, 198 S.E. 461 (Va. 1938) (quotation marks omitted). But that case predates both *New York Times v. Sullivan*, which made actual malice a constitutional requirement in public official cases, and *Iqbal*, which heightened federal pleading requirements. There is no question that the Fourth Circuit now requires public official defamation plaintiffs to plausibly plead actual malice. *See, e.g.*, *Mayfield*, 674 F.3d 369 at 378.

standard—is precisely the sort of allegations that *Twombly* and *Iqbal* rejected." *Mayfield*, 674 F.3d at 378; *see also Iqbal*, 556 U.S. at 678; Post Mem. 14.

Second, he repeats his allegation that the Post acted with "bias, spite and ill-will towards Plaintiff, the GOP, and President Trump." Opp. 16 (citing Compl. ¶¶ 21(g), 21(h), 21(i), 21(f)). But as the Post explained in its opening memorandum, "'case law resoundingly rejects the proposition that a motive to disparage someone is evidence of actual malice.'" Post Mem. 14 (quoting *Parsi v. Daioleslam*, 890 F. Supp. 2d 77, 90 (D.D.C. 2012), and citing other cases). The cases Plaintiff cites do not suggest otherwise. For example, he cites *AdvanFort Co. v. Maritime Executive, LLC*, Opp. 16, but overlooks that the court in that case *granted* the defendant's motion to dismiss, holding that the plaintiff had failed to make an affirmative allegation revealing that the defendant had "obvious reason to doubt" the veracity of its statements. 2015 WL 4603090, at *8 (E.D. Va. July 28, 2015).

Third, he repeats his allegation that the Post had a "'preconceived'" story line, "'abandoned all journalistic standards and integrity,'" and "'did not seek the truth or report it.'" Opp. 16-18 (quoting Compl. ¶ 21(b), (d)). Here, Rep. Nunes cites *Gilmore v. Jones*, 370 F. Supp. 3d 630 (W.D. Va. 2019). Opp. 17-18. But that case supports the Post's argument, for two reasons. For one, *Gilmore* emphasized what the cases cited in the Post's opening memorandum establish—that "neither the pursuit of a preconceived narrative nor a failure to observe journalistic standards is alone ultimately enough to establish actual malice." 370 F. Supp. 3d at 623; *see also, e.g.*, *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 665 (1989); Post Mem. 14-16. In addition, the supposed departure from standards of journalism in *Gilmore* was a failure to seek comment. *See* 370 F. Supp. 3d at 623. But here, of course, the Post *did seek comment* from Rep. Nunes—a fact that he has not disputed. *See* Post Mem. 16.

Fourth, Rep. Nunes cites allegations that the Post supposedly knew he was in Tulsa, Oklahoma, for a campaign event on February 14. Opp. 18 (citing Compl. ¶ 21(e)). As the Post explained in its opening memorandum, however, that allegation does not conflict with any facts in the Article, Post Mem. 15-16, and Rep. Nunes does not attempt to argue that it does.

Fifth, Rep. Nunes repeats his allegation that the Post made a representation that he admits was not included in the Article—that he met at the White House with the President on February 13. Opp. 17 (citing Compl. ¶ 21(c)).[4] Because that statement never appeared in the Article, it cannot support a showing of actual malice. If anything, the Post's decision *not* to publish a statement that Rep. Nunes now claims was false undermines any argument that the Post published anything it knew to be false.

Finally, Rep. Nunes argues vaguely that the Post "disregarded [his] communications regarding [the Article], and continue to stand by this fake news." Opp. 17-18 (citing Compl. ¶ 21(j)). He seems to be suggesting that the Post should have retracted its Article after he went on Fox News to denounce it. *See* Opp. 21 n.7. But once again, he cites no authority, and indeed there is none, "for the proposition that a publisher may be liable for defamation because it fails to retract a statement upon which grave doubt is cast *after* publication." *McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1515 (D.C. Cir. 1996) (emphasis added).

---

[4] Neither Rep. Nunes's Complaint nor his argument makes this clear, but the quotation he refers to was a statement included in a Post pre-publication email requesting comment. The Post never received a response. *See* Ex. C (Harris Decl.) to Post Mem. in Support of Motion to Transfer, ECF No. 11-3, ¶ 7.

**C.      Plaintiff Failed To Comply with the California Retraction Statute.**

**1.      The Retraction Statute Applies to the Article at Issue.**

Rep. Nunes argues that the California retraction statute does not apply to the Post Article because the Post does not qualify as a "daily or weekly news publication."  Opp. 7.  But he does not cite any authority in support of this frivolous argument, and there is none.  The statute defines "daily or weekly news publication" to be "a publication, either in print or electronic form, that contains news on matters of public concern and that publishes at least once a week."  Cal. Civ. Code § 48a(d)(5).  As one of the country's leading daily newspapers, the Post is—obviously—a news publication within the meaning of the statute.

Rep. Nunes appears to be arguing that the Post's online Article does not qualify; he is wrong.  The retraction statute was expanded in 2015 expressly to cover online news reports in "electronic form."  *See* Cal. Civ. Code § 48a; *see also* Post Mem. 23.  In fact, it was the express "intent of the Legislature to ensure that weekly and online publications are afforded the same protection under section 48a of the Civil Code as is afforded to a daily newspaper."  *See* 2015 Cal. Legis. Serv. Ch. 343 (A.B. 998) (emphasis added).[5]

---

[5] To the extent that Rep. Nunes is arguing that tweets by the Post and Shane Harris containing links to the online Article are excluded from the statute's protections, he offers no explanation for this position, and there is nothing in the statute to support his interpretation.  The tweets simply reference the Article and provide links that enable readers to access it.  *See* Compl. ¶ 14; *see also, e.g.*, *Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087, 1137 (N.D. Ill. 2016) ("A hyperlink . . . does not duplicate the content of a prior publication; rather, it identifies the location of an existing publication."); *Lokhova v. Halper*, 2020 WL 963032, at *10 (E.D. Va. Feb. 27, 2020).  In addition, the tweets do not even mention Rep. Nunes.

### 2.      There Is No Exception to the Retraction Statute for Defamation *Per Se*.

Rep. Nunes's argument that the retraction statute "does not apply to claims of defamation *per se*" is equally baseless.  *See* Opp. 7.  This is unsupported by the case law and is contradicted by the plain text of the retraction statute itself.

Here, Rep. Nunes invokes the common law distinction between libel *per se* and libel *per quod* in an attempt to create a hole in the statute where there is none.  *See* Opp. 7-9.  But the retraction statute makes no such distinction in its protections; it expressly applies to "*any action for damages for the publication of a libel in a daily or weekly news publication.*"  *See* Cal. Civ. Code § 48a (emphasis added).  Thus, irrespective of whether the claim is one for defamation *per se* or *per quod*, the statute provides that "plaintiff shall only recover special damages unless a correction is demanded and is not published or broadcast, as provided in this section."  *Id.*

Consistent with this plain meaning, courts routinely have applied the retraction statute to bar claims of defamation *per se*.  Indeed, the Post cited one such case in its opening memorandum, which Rep. Nunes ignores: *Anschutz Entm't Grp., Inc. v. Snepp*, 90 Cal. Rptr. 3d 133, 165 (Ct. App. 2009).  Post Mem. 23; *see also, e.g.*, *Kalpoe v. Superior Court*, 166 Cal. Rptr. 3d 80, 87-88 (Ct. App. 2013); *Harris v. Curtis Publ'g Co.*, 121 P.2d 761, 766, 769 (Cal. Dist. Ct. App. 1942). It would make no sense to limit a retraction statute to claims of defamation *per quod*, and none of the cases cited by Rep. Nunes even addresses this point, much less supports his unreasonable interpretation.  *See also, e.g.*, *White v. Manchester Enter., Inc.*, 871 F. Supp. 934, 937 (E.D. Ky. 1994) (rejecting argument that the Kentucky retraction statute would not apply to a *per se* claim, and holding that *per se* cases cited in support of the argument "neither address nor negate the statutory obligation to make a demand for correction").

### 3. The Retraction Statute Is Not "Procedural."

Rep. Nunes argues that the retraction statute "is a matter of procedure," and therefore does not apply pursuant to Virginia's choice of law principles. Opp. 9. This too is a meritless argument that is completely unsupported by case law. His theory cannot be squared with the rule that "the right to recovery and the limits on recovery are substantive law." *Spring v. United States*, 833 F. Supp. 575, 579 (E.D. Va. 1993) (quotation marks omitted) (holding that damages limitation under wrongful death statute was substantive); *see also, e.g.*, *Rybolt v. Jarrett*, 112 F.2d 642, 643 (4th Cir. 1940) (*lex loci* controls "the limit of damages"); *Griffin v. Red Run Lodge, Inc.*, 610 F.2d 1198, 1206 n.7 (4th Cir. 1979) ("Availability *vel non* of punitive damages is clearly a matter of substantive right to be determined by reference to state law.").

Tellingly, Rep. Nunes does not cite a single case holding that a retraction statute is anything other than a substantive limitation on a defamation right of action. *See* Opp. 9. To the contrary, courts have rejected his argument and applied retraction statutes in diversity actions. In *Price v. Stossel*, for example, the plaintiff argued that the California retraction statute was "inapplicable because it is procedural." 2008 WL 2434137, at *6 n.12 (S.D.N.Y. June 4, 2008). The court disagreed, emphasizing that prior courts had held that the statute was substantive and applied in diversity actions. *Id.* (citing cases including *King v. ABC, Inc.*, 1998 WL 665141, at *2-4 (S.D.N.Y. Sept. 28, 1998) (applying California retraction statute and dismissing case)). Rep. Nunes has no response to these cases.

### 4. The Retraction Statute Does Not Violate Virginia "Public Policy."

Rep. Nunes's three-sentence argument that the California retraction statute violates Virginia "public policy" is equally baseless. *See* Opp. 9–10. He does not cite any authority in support of his position, and there is none.

While Virginia courts may decline to apply foreign law as a matter of comity if the foreign law contravenes Virginia public policy, this rare exception "is generally limited to 'something immoral [or] shocking to one's sense of right.'  Were this not the case, choice of law rules would rarely operate." *Chesapeake Supply & Equip. Co. v. J.I. Case Co.*, 700 F. Supp. 1415, 1421 (E.D. Va. 1988) (alteration in original) (citation omitted) (quoting *Tate v. Hain*, 25 S.E.2d 321, 325 (Va. 1943) (per curiam)); *see also, e.g.*, *Dreher v. Budget Rent-A-Car Sys., Inc.*, 634 S.E.2d 324, 330 (Va. 2006) (explaining that the court would apply a New York statute as a matter of comity even if it "was offensive").

Here, Rep. Nunes does not even attempt to explain what he understands Virginia "public policy" to be, beyond stating that there is no retraction statute in Virginia.  Opp. 9-10.  But this is nothing more than an acknowledgment that a conflict of laws exists, which simply means a choice of law is required in the first place.  "It is precisely because one state's rules may differ from another's that choice of law rules are necessary as a matter of comity among the states." *Chesapeake Supply & Equip. Co.*, 700 F. Supp. at 1421.  The California retraction statute is neither "immoral" nor "shocking," and there is no compelling basis to set aside the statute on public policy grounds.  *Id.* (quotation marks omitted); *Dreher*, 634 S.E.2d at 330.

### 5.    California Law Applies to this Case.

Finally, Rep. Nunes provides no valid reason why, under a *lex loci* choice of law analysis, the law of California should not apply.  *See* Opp. 10-12.  While the Virginia Supreme Court has not yet addressed the choice of law question in a multistate defamation case like this one, the best prediction is that it would apply the law of the state of his predominant injury, California.  *See Gilmore v. Jones*, 370 F. Supp. 3d at 645.

Rep. Nunes argues that Virginia law should apply because the Post's printing press is in Virginia and at least some of its web servers are in Virginia.  Opp. 11.  But these facts should not

resolve the choice of law question in a multistate defamation case like this.  Indeed, he appears to concede that, for choice of law purposes, publication occurs where allegedly defamatory statements were published—that is, where "the tortious content is 'communicated to a third party' so as to be 'heard and understood by such person.'"  Opp. 11 (quoting *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 915 (E.D. Va. 2004)).[6]  His general statement of the law only underscores the problem presented by a multistate defamation case:  A court cannot simply look to the place of publication to resolve the choice of law question where, as here, the publication occurred in 50 states at the same time.  *See Wells v. Liddy*, 186 F.3d 505, 521-22 (4th Cir. 1999); Post Mem. 17-18.

Plaintiff's argument ignores the wealth of authority cited in the Post's opening memorandum, which makes clear that the "vast majority" of *lex loci* jurisdictions resolve this problem by applying the law of the state "where the plaintiff suffered the greatest injury."  *See* Post Mem. 18-22 (quoting *Hatfill v. Foster*, 415 F. Supp. 2d 353, 364 (S.D.N.Y. 2006)); *see also Gilmore*, 370 F. Supp. 3d at 645; *Ascend Health Corp. v. Wells*, 2013 WL 1010589, at *2 (E.D.N.C. Mar. 14, 2013); *Adventure Outdoors, Inc. v. Bloomberg*, 2007 WL 9735875, at *3 (N.D. Ga. Dec. 18, 2007); *Hudson Assocs. Consulting, Inc. v. Weidner*, 2010 WL 1980291, at *6 (D. Kan. May 18, 2010).  Of these authorities, Rep. Nunes mentions only *Gilmore*, and he does so only in passing.[7]  He fails altogether to grapple with the multiple reasons why these courts have applied this law, as set out in the Post's opening memorandum.  Post Mem. 18-22.

---

[6] Rep. Nunes cites other similar cases, including *Meadows v. Northrup Grumman Innovation Sys., Inc.*, 2020 WL 476671, at *4 (W.D. Va. 2020) ("In defamation actions, the place of the harm has traditionally been considered to be the place where the defamatory statement was published, i.e., seen or heard by non-parties.") (quotation marks omitted).  *See* Opp. 10-11.

[7] Rep. Nunes erroneously suggests that the Post "invites the Court to apply a 'most significant relationship' test," which the Virginia Supreme Court has rejected.  Opp. 12 (quotations original).  To the contrary, like the court in *Gilmore*, the Post explained at length that "the tests are different."

Without engaging the Post's cases, Rep. Nunes relies instead on other cases that apply the disfavored "place of publication" standard. *See* Opp. 10-12. These cases merely underscore the vastly inconsistent results that have arisen when that standard is applied to defamation cases involving multiple states. *Compare, e.g.*, *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 502 (W.D. Va. 2019) (place of publication is the place where an allegedly defamatory email was opened and read), *with ABLV Bank v. Ctr. for Advanced Def. Studies Inc.*, 2015 WL 12517012, at *1 (E.D. Va. Apr. 21, 2015) (place of publication is the location of the office from which an allegedly defamatory online report was published). This is one of the several reasons why the *Gilmore* court held that the Virginia Supreme Court would reject the place of publication rule in favor of a more coherent place of injury test. As the *Gilmore* court explained:

> If 'publication' is defined as the place where content is communicated to third parties, it is unclear whether 'publication' of online content occurs in the state where an individual uploads content, the state where the relevant media platform or publication maintains headquarters, the state where a website's servers are located, or the state where third parties actually view the content (which, absent restrictions on the geographic reach of a particular online publication, will be in all fifty states and across the world). Indeed, district courts in this circuit have reached varying conclusions about the meaning of publication in different online contexts.

370 F. Supp. 3d at 665 (citing cases, including *ABLV Bank*, 2015 WL 12517012). Rep. Nunes fails to explain why the *Gilmore* analysis results in anything other than the best prediction of how the Virginia Supreme Court will handle this open question.[8]

---

Post Mem. 21; *see Gilmore*, 370 F. Supp. 3d at 665 n.37 ("[t]he Court *does not* hold that the Supreme Court of Virginia would apply the Second Restatement's 'most significant relationship' test, which provides that defamation cases should be decided under the law of the state with "the most significant relationship to the occurrence and the parties" (emphasis added) (citation omitted)).

[8] Only two cases cited by Rep. Nunes actually analyze the multistate defamation choice of law issue in any depth: *Cockrum v. Donald J. Trump for President, Inc.*, 365 F. Supp. 3d 652, 669

Here, there can be little doubt that the place of Rep. Nunes's predominant injury is California. He ignores his extensive allegations about his connections to California, including his specific allegation that he is a "citizen of California." Compl. ¶ 8. Courts have repeatedly held that an individual is deemed to have suffered injury from alleged defamation "where the plaintiff was domiciled, absent strong countervailing circumstances." *Hatfill*, 415 F. Supp. 2d at 365; *see Gilmore*, 370 F. Supp. 3d at 666 ("state where the plaintiff [was] primarily injured" was where he lived and worked); *see also* Post Mem. 18-19. Rep. Nunes cites no authority to the contrary, and there are no such "strong countervailing circumstances here." Rather, it is a matter of both settled law and common sense that Rep. Nunes—a California Congressman who has lived his entire life in California, *see* Compl. ¶ 8—would have suffered primary harm in California.

In his opposition, Rep. Nunes seeks to suggest that his injury was "concentrated in Virginia." Opp. 12. But he pleads no credible factual allegations to substantiate that he experienced such concentrated harm in a place where he neither lives nor works. The Complaint merely alleges that most of the country's "national security apparatus" is in Virginia, Compl. ¶ 8, and that he suffered "substantial injury" there, *id.* ¶ 12. But these conclusory assertions provide no basis for overcoming the strong presumption that Rep. Nunes suffered his most significant injury in his state of domicile. *See, e.g.*, *Hatfill*, 415 F. Supp. 2d at 365. After all, Rep. Nunes was elected to Congress by the people of his home district in California, Compl. ¶ 8; it is, therefore,

---

(E.D. Va. 2019), and *Depp v. Heard*, Case No. CL-2019-2911 (Fairfax Cir. 2019). *See* Opp. 10-11. The Post explained in its opening memorandum the multiple reasons why *Cockrum* is distinguishable; Rep. Nunes provides no response. *See* Post Mem. 21-22. As for *Depp*, the Fairfax court acknowledged the "well-articulated" analysis in *Gilmore*, but declined to predict how the Supreme Court of Virginia would resolve this novel question, noting that it was "bound by the doctrine of *stare decisis*." *Id.* at *7. But here, in contrast, this court is obliged to "predict how the state's highest court would rule on [the] unsettled issue." *Horace Mann Ins. v. Gen. Star Nat'l Ins.*, 514 F.3d 327, 329 (4th Cir. 2008).

his reputation among the constituents of his home district that is of particular importance to his ability to continue his work in the nation's capital, *see* Opp. 14 (asserting that Plaintiff would be "prejudice[d] . . . in his profession" if he lied to the president).  Again, Rep. Nunes cites no case to the contrary.

Notably, Rep. Nunes's argument conflicts with "the underlying rationale" of the *lex loci* rule itself: "'uniformity, predictability, and ease of application.'"  *Gilmore*, 370 F. Supp. 3d at 665 (quoting *McMillan v. McMillan*, 253 S.E.2d 662, 664 (1979)).  How could the Post's Washington, D.C. journalists (or anyone else) have predicted that the law of Virginia would apply to a news item about an Oval Office encounter in which President Trump made clear that he had learned of a Congressional briefing from a California congressman?  As the *Gilmore* court clearly explained, the majority rule achieves these goals of the *lex loci* rule, and it should apply here.  *Id.* at 664; *see also Hatfill*, 415 F. Supp. 2d at 365.

### 6.      There Is No Allegation of Special Damages.

Because Rep. Nunes failed to comply with the retraction statute, he can "only recover special damages."  Cal. Civ. Code § 48a.  But his opposition does not dispute that he has failed to plead them.  Because the Complaint lacks an adequate allegation of special damages, it "does not allege a legally sufficient cause of action under California law," and should be dismissed.  *King*, 1998 WL 665141, at *4; Post Mem. 26; Fed. R. Civ. P. 12(b)(6).

## II.    THE COMPLAINT FAILS TO STATE A CONSPIRACY CLAIM FOR ADDITIONAL REASONS.

Rep. Nunes does not contest the point that if his defamation claim is dismissed, his claim for conspiracy should be dismissed as well.  *See* Opp. 21-22.  Nor does he dispute that multiple courts in this District have dismissed similar conspiracy claims brought by his counsel on precisely the grounds advanced by the Post in its memorandum.  Post Mem. 26-28.

The opposition also fails to show how his conspiracy claim rests on anything other than the type of conclusory allegation—"naked assertions devoid of . . . factual enhancement"—that cannot support a claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (brackets and internal quotation marks omitted).  His allegation of an agreement between the Post and an ambiguous, undefined set of "House Democrats," Opp. 22, is precisely the kind of "conclusory allegation of agreement" that is insufficient under modern pleading standards.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007); *Cox v. MAG Mut. Ins.*, 2015 WL 1640513, at *6 (E.D. Va. Apr. 9, 2015); Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated:  April 29, 2020

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By:  /s/ *Emily A. Rose*

Kevin T. Baine (*pro hac vice*)
Thomas G. Hentoff (*pro hac vice*)
Nicholas G. Gamse (*pro hac vice*)
Emily A. Rose (VSB No. 89529)

725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
erose@wc.com

*Counsel for WP Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2020, I electronically filed the foregoing Reply Memorandum of Law in Support of the Washington Post's Motion to Dismiss with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to registered CM/ECF participants.

/s/ *Emily A. Rose*
*Counsel for WP Company LLC*