**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

DEVIN G. NUNES,

    Plaintiff,

v.                                    Civil Action No. 3:20-cv-146

WP COMPANY, LLC, et al.,

    Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on the MOTION TO TRANSFER (ECF No. 10) (the "MOTION") of WP Company, LLC, doing business as the Washington Post (the "Post"). The Court has considered the MOTION, the supporting, opposing, and reply memoranda, and accompanying exhibits, and the COMPLAINT (ECF No. 1). For the reasons set forth below, the United States District Court for the District of Columbia (the "District of Columbia") is the more logical and convenient forum in which to adjudicate the claims here presented. Accordingly, the Post's MOTION TO TRANSFER (ECF No. 10) will be granted and the action will be transferred to the District of Columbia.

**BACKGROUND**

Plaintiff Devin G. Nunes ("Plaintiff" or "Nunes") represents California's 22nd Congressional District in the U.S. House of

Representatives.  (ECF No. 1 ¶ 8.)  Nunes is represented by Steven S. Biss ("Biss") who maintains offices in Charlottesville, Virginia.  (Id. at 23 (signature page).)  The Post is a Delaware corporation with its principal place of business in Washington, D.C.  (Id. ¶ 9.)

Shane Harris ("Harris") is an intelligence and national security reporter at the Post.  (ECF No. 11-3 ¶ 1.)  He co-authored the publication at issue with Ellen Nakashima ("Nakashima"), Josh Dawsey ("Dawsey"), and Anne Gearan ("Gearan"). (Id. ¶ 4.)  All four authors live in Washington, D.C. and work for the Post at its headquarters in Washington, D.C.  (Id.)  All four authors "generally maintain [their] records from [their] reporting in Washington, D.C., as well."  (Id.)  They "were assisted by Isabelle Khurshudyan, a Post journalist who is based in Moscow" and "all of [the] reporting for the Article was conducted in Washington, D.C. (with contributions from Ms. Khurshudyan in Moscow), and none of the reporting took place in Virginia."  (Id. ¶¶ 5-6.)

This action arises out of an article that the Post published on February 20, 2020, entitled *Senior intelligence official told lawmakers that Russia wants to see Trump reelected* (the "Article"). (ECF No. 1 ¶ 3.)  Nakashima, Harris, Dawsey, and Gearan are listed as the authors.  (ECF No. 11-1 at 2.)  The Article reported that a "senior U.S. intelligence official told lawmakers last week that

Russia wants to see President Trump reelected" and that, "[a]fter learning of that analysis . . ., Trump grew angry at his acting director of national intelligence, Joseph Maguire . . . ." (<u>Id.</u>) The Article also stated that "[t]he official, Shelby Pierson, said several times during the briefing that Russia had 'developed a preference' for Trump" and that "one person familiar with the matter" had stated that "Trump learned about Pierson's remarks from Rep. Devin Nunes . . . ." (<u>Id.</u>)

Nunes asserts two counts in the Complaint. Count I alleges that the Post and Harris's "false statements constitute defamation *per se*" and that the "statements accuse and impute to [Nunes] criminal misconduct, and an unfitness to perform the duties of an office or employment for profit, or the want of integrity in the discharge of the duties of such office or employment . . . ." (ECF No. 1 ¶ 18.) In Count I, Nunes also alleges that the Post and Harris "knew or should have known that their defamatory statements would be republished" when they published the Article online and tweeted about it. (<u>Id.</u> ¶ 19.) Nunes also alleges that the Post and Harris acted with "actual malice and reckless disregard for the truth" because, *inter alia*: (1) they "manufactured the statements out of whole cloth," (<u>id.</u> ¶ 21(a)); and (2) they "knew their anonymous sources had supplied false information," (<u>id.</u> ¶ 21(c)). Count II alleges common law conspiracy and that the Post "and its agents (including Harris),

3

combined, associated, agreed or acted in concert with House Democrats . . . for the express purpose of defaming and injuring [Nunes]." (Id. ¶ 26.)   Nunes seeks $250,000,000 in compensatory damages and $350,000 in punitive damages. (Id. at 23 (prayer for relief).)

The Post filed the MOTION on March 26, 2020, and the MOTION has been fully briefed. (ECF No. 10.)   The Court dispenses with oral argument because the facts and legal conclusions are adequately presented in the materials and oral argument would not aid in the decisional process.   The matter is thus ripe for decision.

Before addressing the MOTION, it is appropriate to note that another judge of this Court recently said that:

> It is with chagrin that [the] Court must begin to address this motion by observing that . . . Plaintiff[] engages in *ad hominin* attacks against [the Post, Harris, and others in the Complaint,] which the Court cannot tolerate. . . . The Court reminds Counsel for Plaintiff[] that, as an officer of the Court, he may be sanctioned for engaging in conduct unbefitting of this Court.   Local Rule 83.1(J), which pertains to "Courtroom Decorum," has equal force on the papers: "Counsel shall at all times conduct and demean themselves with dignity and propriety."

Steele v. Goodman, 3:17-cv-601, 2019 WL 3367983, at *3 (E.D. Va. July 25, 2019) (Lauck, J.) (quoting E.D. Va. Loc. Civ. R. 83.1(J)). Unfortunately, that circumstance also reflects some of the papers filed in this case.

## DISCUSSION

28 U.S.C. § 1404(a) permits the transfer of civil cases and provides that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

To determine whether a § 1404(a) transfer is appropriate, "a district court must make two inquiries: (1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." Koh v. Microtek Int'l, Inc., 250 F. Supp. 2d 627, 630 (E.D. Va. 2003). "District courts within [the Fourth Circuit] consider four factors when deciding whether to transfer venue: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 444 (4th Cir. 2015). The "decision whether to transfer an action pursuant to § 1404(a) is committed to the sound discretion of the district court." BHP Int'l Inv., Inc. v. OnLine Exch., Inc., 105 F. Supp. 2d 493, 498 (E.D. Va. 2000) (quoting Versol B.V. v. Hunter Douglas, Inc., 806 F. Supp. 582, 591 (E.D. Va. 1992)) (internal quotation marks omitted). The

moving party—here, the Post—has the burden of showing that transfer is proper. <u>Byerson v. Equifax Info. Servs., LLC</u>, 467 F. Supp. 2d 627, 631 (E.D. Va. 2006).

As a preliminary matter, "courts have adhered to the general rule that a § 1404(a) transfer contemplates a plenary transfer of the entire case . . . ." <u>TechnoSteel, LLC v. Beers Const. Co.</u>, 271 F.3d 151, 157 (4th Cir. 2001) (quoting <u>Chrysler Credit Corp. v. Country Chrysler, Inc.</u>, 928 F.2d 1509, 1518 (10th Cir. 1991)) (internal quotation marks omitted); <u>see also</u> <u>One Beacon Ins. v. JNB Storage Trailer Rental Corp.</u>, 312 F. Supp. 2d 824, 828 n.1 (E.D. Va. 2004) ("Because § 1404(a) only allows transfer of entire actions, in appropriate cases, the court may sever some claims, transfer the severed claims, and stay the remaining claims pending the outcome of the transferred action."). In other words, "[w]here there are multiple defendants in a case, the fact that transfer of one defendant would be proper or improper under § 1404(a) does not prevent transfer of the others." <u>Waterman v. Thor Motor Coach, Inc.</u>, 3:19-cv-890, 2020 WL 1290595, at *6 (E.D. Va. Mar. 18, 2020). Consequently, although Harris did not file a motion to transfer or oppose the Post's MOTION,[1] as long as the

---

[1]    In support of the MOTION, the Post submitted the DECLARATION OF SHANE HARRIS.    (ECF No. 11-3.)   Harris declared that he had "not been served with process" and did "not consent to personal jurisdiction" in the Eastern District of Virginia but "consent[ed] to transfer of the case to Washington, D.C."   (<u>Id.</u> ¶ 9.)

6

requirements of a § 1404(a) transfer are met, the Court may also transfer the claims against Harris.

## A. The Action Could Have Been Brought in the District of Columbia.

The first step in the transfer analysis, which requires that both venue and jurisdiction with respect to the defendant be proper in the transferee district, looks to whether the action could have originally been brought in the District of Columbia. Koh v. Microtek Int'l, Inc., 250 F. Supp. 2d 627, 630 (E.D. Va. 2003); see also Hengle v. Curry, No. 3:18-cv-100, 2018 WL 3016289, at *5 (E.D. Va. June 15, 2018). Neither party disputes that the case could have been brought in the District of Columbia. (ECF No. 11 at 4-5; ECF No. 16 at 2 n.2.)

Both subject matter and personal jurisdiction exist over the Post in the District of Columbia. Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332 because the "parties are citizens of different States" and the "amount in controversy exceeds the sum of $75,000, exclusive of interest and costs." (ECF No. 1 ¶ 11.) Likewise, because the Post's principal place of business is in Washington, D.C., (ECF No. 11 at 7), personal jurisdiction over the Post exists in the District of Columbia. See D.C. Code § 13-422 ("A District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief.").

7

Accordingly, the District of Columbia would have jurisdiction over the Post.

The District of Columbia is also a proper venue for this action. Venue is proper under 28 U.S.C. § 1391(b)(2) because a "substantial part of the events or omissions giving rise to the claim occurred" in Washington, D.C. Venue is also proper under § 1391(b)(1) because the Post "resides" in Washington, D.C., given that the Post is subject to personal jurisdiction there, and "all defendants are residents of the State in which the district is located." Consequently, because jurisdiction and venue would both be proper in the District of Columbia, Nunes could have brought this case there, thus satisfying the first transfer inquiry.

**B. The Section 1404(a) Factors Weigh in Favor of Transfer.**

In the second step of the § 1404(a) transfer analysis, a court must weigh the following factors: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interests of justice." Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 444 (4th Cir. 2015). These factors strongly support transfer to the District of Columbia.

**(1)  Plaintiff's Choice of Forum**

"As a general rule, a plaintiff's choice of venue is entitled to substantial weight in determining whether transfer is appropriate." Id. (quoting Bd. of Trs. v. Sullivant Ave. Props.,

LLC, 508 F. Supp. 2d 473, 477 (E.D. Va. 2007)) (internal quotation marks omitted).   "But, if the plaintiff's choice of forum is neither the nucleus of operative facts nor the plaintiff's home forum, the plaintiff's choice is accorded less weight." Seaman v. IAC/InterActive Corp., Inc., No. 3:18-cv-401, 2019 WL 1474392, at *4 (E.D. Va. Apr. 3, 2019).

It is undisputed that the Eastern District of Virginia is not Nunes's home forum.  (ECF No. 16 at 6 (Nunes stating that he "is a citizen of California").)   That Nunes "works at the Capitol within a few minutes' drive of Virginia" and "oversees the intelligence community, including ODNI which is located in Virginia" does not alter this fact.   (Id.)   Indeed, Nunes's assertion that he "works at the Capitol," which is located in Washington, D.C., acts to support transferring this action to the District of Columbia.

Moreover, the Eastern District of Virginia is not the nucleus of operative facts.   The offending act at issue—the publication of the Article online—occurred in Washington, D.C.  (ECF No. 11-3 ¶ 8.)   Additionally, the Article was researched, written, and edited in Washington, D.C. with assistance from a journalist located in Moscow, Russia, not Virginia.  (Id. ¶¶ 6, 8.)   The only connection between this action and Virginia, besides the location

of Plaintiff's counsel,[2] is that the Article was printed in Springfield, Virginia. (Id. ¶ 8.) That tenuous connection is insufficient to give significant weight to Nunes's choice of forum.

It is true that the Article could have been accessed on the Internet and spread through social media in Virginia. (See, e.g., ECF No. 1 ¶ 15.) However, those tethers to Virginia are insufficient to warrant according Nunes's choice of forum any significant preference. "The first alleged connection (Internet access) has no limiting principle when it comes to online publications. If accepted, that notion would mean that, in similar cases involving online publications, a plaintiff's choice of forum would be given significant weight in virtually any judicial district because the Internet is everywhere." Seaman, 2019 WL 1474392, at *5.

The Eastern District of Virginia is not Nunes's home forum, and there is no logical connection between the events in this case and this district. Thus, Nunes's choice of forum is entitled only to slight deference. On the facts of this case, the District of Columbia is a more appropriate venue because the Article was primarily researched, written, and edited there, Nunes works

---

[2]    Although Nunes's counsel has his offices in Virginia, "convenience to counsel is not an appropriate consideration in resolving a motion to transfer venue." Seaman, 2019 WL 1474392, at *5 n.7 (quoting Koh v. Microtek Int'l, Inc., 250 F. Supp. 2d 627, 635 (E.D. Va. 2003)) (internal quotation marks omitted).

there, and the Post and all four authors, including Harris, reside there.

### (2)  Witness Convenience and Access

"The convenience of witnesses is of considerable importance when considering a transfer, especially the convenience of non-party witnesses, whose location should be afforded greater weight in deciding a motion to transfer venue." Id.  "The party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." Koh v. Microtek Int'l, Inc., 250 F. Supp. 2d 627, 636 (E.D. Va. 2003).  In other words, "the influence of this factor cannot be assessed in the absence of reliable information identifying the witnesses involved and specifically describing their testimony." Bd. of Trs. v. Baylor Heating & Air Conditioning, Inc., 702 F. Supp. 1253, 1258 (E.D. Va. 1988).  "To satisfy their burden that a forum is inconvenient for witnesses, the Defendants must provide particularized information of a witness's potential testimony, how that testimony is material and non-cumulative, or the degree to which it will be inconvenient to access that testimony in this district." Seaman, 2019 WL 1474392, at *5.

11

"Witness convenience is often dispositive in transfer decisions. . . . Inconvenience to a witness whose testimony is cumulative is not entitled to greater weight.  By contrast, greater weight should be accorded inconvenience to witnesses whose testimony is central to a claim and whose credibility is also likely to be an important issue."  Baylor Heating & Air Conditioning, Inc., 702 F. Supp. at 1258.  "In many instances, the original forum is convenient for plaintiff's witness, but inconvenient for defendant's witnesses, and the reverse is true for the transferee forum.  Under these circumstances, transfer is inappropriate because the result of transfer would serve only to 'shift the balance of inconvenience.'"  Id. (quoting E. Sci. Mktg. v. Tekna-Seal Corp., 696 F. Supp. 173, 180 (E.D. Va. 1988)).

The Post has shown that there are several "significant third parties for discovery," including "those individuals who were present for the Pierson briefing to members of the House Intelligence Committee; witnesses with knowledge of the communications between Rep. Nunes and President Trump regarding the briefing; and witnesses to the meeting in the Oval Office between President Trump and Acting Director of National Intelligence Maguire."  (ECF No. 11 at 8 (internal quotation marks omitted).)  The Post has shown that these witnesses live in Washington, D.C.  Additionally, the Post identifies Nunes's Congressional staff members who work in Washington, D.C. as other

12

"important" third-party witnesses.  (Id.)  One of those staffers, Jack Langer, is Nunes's Communications Director whom the Post "contacted . . . for comment prior to publication."  (Id. at 8-9.)  Given the content of the Article and Nunes's defamation claim, the Court agrees that the testimony of the witnesses identified by the Post is likely to be significant.  That all of these witnesses either reside or work in Washington, D.C. strongly supports transfer because, even assuming that they are all willing witnesses, "[m]aking attendance more convenient or affordable for a willing witness still weighs in favor of transfer, just not as heavily."  Bluestone Innovations, LLC v. LG Elecs., Inc., 940 F. Supp. 2d 310, 317 (E.D. Va. 2013).  Moreover, that all four authors reside in Washington, D.C. further supports transfer because "it is a fairly elementary proposition that the author[s] of an allegedly defamatory article . . . [are] key witness[es] about the writing of the article, the research [they] did, and the claims [they] assert[] in the article."  Seaman v. IAC/InterActive Corp., Inc., No. 3:18-cv-401, 2019 WL 1474392, at *6 (E.D. Va. Apr. 3, 2019).

In contrast, Nunes "identifies material witnesses in Virginia (Pierson, Maguire, @RVAwonk a/k/a Caroline Orr)."  (ECF No. 16 at 11.)  There is no explanation as to who "RVAwonk a/k/a Caroline Orr" is or how she is involved in this case, apart from four references in the Complaint to tweets she made.  (See ECF No. 1

13

¶ 15.)  With respect to Pierson and Maguire, both individuals work in Washington, D.C., and Nunes has not explained why it would be more inconvenient for them to travel to Washington, D.C.—where they work—as opposed to Richmond, Virginia.   Thus, because the majority, if not all, of the significant witnesses either reside or work in Washington, D.C., on this record, this factor favors transfer.

### (3)  Convenience of the Parties

The third factor is the convenience to the parties in litigating in either the Eastern District of Virginia or the District of Columbia.  The Post, as the movant, "must show (1) that the original forum is convenient for [it,] and (2) that [Nunes] will not be substantially inconvenienced by the transfer." Seaman, 2019 WL 1474392, at *6.  The parties' residence "is a consideration in this assessment, but 'residence is not a controlling factor and may be outweighed in the context of a particular case by countervailing considerations relevant to the convenience of the witnesses and the interest of justice.'"  Id. (quoting 15 Fed. Prac. & Proc. Juris. § 3849 (4th ed.)).

This factor supports transfer.  Litigating in Washington, D.C. will clearly be more convenient for the Post, given that its principal place of business is in Washington, D.C., all of the Article's authors live and work in Washington, D.C., and the authors' files are maintained at the Post's headquarters in

Washington, D.C.  (ECF No. 11 at 7.)  In contrast, Nunes does not
provide any explanation to support his conclusory allegation that
transferring this case to the District of Columbia "would
accomplish absolutely nothing more than merely shifting the
balance of inconvenience to [Nunes]."  (ECF No. 16 at 8.)  Indeed,
Nunes "works at the Capitol," which is located in Washington, D.C.
(Id. at 6.)  To the extent that Nunes would have to travel from
California, Nunes has not suggested that travelling to one of
Washington, D.C.'s three major airports would be more inconvenient
than travelling to Richmond, Virginia.

Consequently, litigating in the District of Columbia will be
"significantly more convenient for [the parties, their] witnesses,
and the production of evidence." Seaman, 2019 WL 1474392, at *7.
"[W]here the plaintiff chooses a forum away from home . . .,
plaintiff's venue choice is given less weight and if the venue
substantially inconveniences defendants, transfer may be ordered."
Bd. of Trs. v. Baylor Heating & Air Conditioning, Inc., 702 F.
Supp. 1253, 1259 (E.D. Va. 1988).  Because (1) litigating in the
District of Columbia is substantially more convenient for the Post,
(2) Virginia is not Nunes's home forum, and (3) Nunes has not
identified any reason why the District of Columbia is more
inconvenient than the Eastern District of Virginia, this factor
supports transfer.

15

**(4)   Interest of Justice**

"The last factor for the Court to consider is 'the interest of justice,' which encompasses public interest factors aimed at 'systemic integrity and fairness.'" Seaman, 2019 WL 1474392, at *7 (quoting Stewart Org. v. Ricoh Corp., 487 U.S. 22, 30 (1988)). "Judicial economy and the avoidance of inconsistent judgments are prominent among the principal elements of systemic integrity." Id. Other factors include "the pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties, and the possibility of harassment." Koh v. Microtek Int'l, Inc., 250 F. Supp. 2d 627, 639 (E.D. Va. 2003). "Systematic integrity must also take account of a party's attempt to game the federal courts through forum manipulation." Seaman, 2019 WL 1474392, at *7 (quoting Hengle v. Curry, No. 3:18-cv-100, 2018 WL 3016289, at *11 (E.D. Va. June 15, 2018)) (internal quotation marks and alteration omitted).

The parties dispute whether the law of California or the District of Columbia applies to this case. (ECF No. 11 at 11; ECF No. 16 at 12-14.) If, as Nunes contends, Washington, D.C. law applies, the District of Columbia clearly would be more familiar with Washington, D.C. substantive law and would be better suited to hear this action. And, if California law applies, as the Post

16

contends, the Court has no doubt that the District of Columbia is just as able as this Court to try this case.

Although the parties also dispute how to measure the docket conditions between the Eastern District of Virginia and the District of Columbia, (see ECF No. 11 at 11; ECF No. 16 at 14), the Court takes judicial notice[3] that the median time from the filing to disposition of a civil action in 2019 in the District of Columbia and the Eastern District of Virginia was 4.7 months and 6.0 months, respectively.   United States District Courts — National      Judicial     Caseload      Profile,     2,     25, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na _distprofile1231.2019.pdf.   Consequently, the docket conditions in this District and in the District of Columbia are not significantly different and are thus "minor considerations that receive little weight if all other reasonable and logical factors result in a transfer of venue." Seaman, 2019 WL 1474392, at *7 (quoting Koh, 250 F. Supp. 2d at 639) (internal quotation marks and alteration omitted).   For the aforementioned reasons, the

---

[3]   The Federal Rules of Evidence allow the Court to take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).   "Numerous district courts have held that judicial notice of information contained in state or federal governmental websites is proper." Williams v. Universal Ins., 4:13-cv-3518, 2014 WL 12621154, at *4 (D.S.C. Oct. 9, 2014) (listing cases).

other reasonable and logical factors support transferring this case.

Lastly, the Court has significant concerns about forum shopping, especially given that Nunes works in Washington, D.C., not in Virginia. As the Court has explained to Plaintiff's counsel on numerous occasions, the "Court cannot stand as a willing repository for cases which have no real nexus to this district. The 'rocket docket' certainly attracts plaintiff[s], but the Court must ensure that this attraction does not dull the ability of the Court to continue to act in an expeditious manner." Id. (quoting Phillips v. Uber Techs., Inc., No. 3:15-cv-544, 2016 WL 165024, at *3 (E.D. Va. Jan. 13, 2016)) (internal citations and quotation marks omitted). Because this case is only slightly connected to this district, this factor militates in favor of transfer to the District of Columbia.[4]

### CONCLUSION

For the reasons set forth above, the Post has satisfied its burden of showing that a § 1404(a) transfer is warranted. Accordingly, the Post's MOTION TO TRANSFER (ECF No. 10) will be

---

[4] The Post has also filed a MOTION TO DISMISS COMPLAINT (ECF No. 8). Because this action will be transferred to the District of Columbia, the Court will not resolve the pending MOTION TO DISMISS COMPLAINT (ECF No. 8), which is best resolved by the transferee court.

granted, and the case will be transferred to the District of Columbia.

It is so ORDERED.

_____ /s/   REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: May 21 , 2020